**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

SYRETTA ANGELIQUE HARVIN,
DAVID WEAVER, JR., JOSEPH A. RIEDEL,
DASHAWN J. THORNE,                                    CASE NO.:
o/b/o themselves and all other similarly
situated persons,

        Plaintiffs,

v.

CARVANA, LLC,

And

BRIDGECREST CREDIT COMPANY, LLC,

And

ALLY BANK, a Delaware corporation,

And

WILMINGTON TRUST, National Association,          **CLASS ACTION**
not in its individual capacity but solely as Trustee
of the following Delaware statutory trusts:
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-1,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-2,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-3,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-4,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2020-NP1,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2020-P1,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N1,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N2,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N3,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N4,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-P1,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-2,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-3,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-P2,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-4,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-P3,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N4,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-N5,

1

CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-N6,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P1,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P2,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P3,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P4,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P5,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P6,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2023-P1,
CARVANA AUTO RECEIVABLES GRANTOR TRUST 2023-N1,
CARVANA AUTO RECEIVABLES TRUST 2019-1,
CARVANA AUTO RECEIVABLES TRUST 2019-2,
CARVANA AUTO RECEIVABLES TRUST 2019-3,
CARVANA AUTO RECEIVABLES TRUST 2019-4,
FLEET STREET AUTO-4 2020 TRUST,
CARVANA AUTO RECEIVABLES TRUST 2021-P1,
CARVANA LLC,
CARVANA AUTO RECEIVABLES GRANTOR
TRUST 2022-N4,
FLEET STREET AUTO-3 2020 TRUST,
FLEET STREET AUTO TRUST 2022-1,
CARVANA RECEIVABLES DEPOSITOR LLC,
CARVANA FAC LLC,
CARVANA AUTO RECEIVABLES
TRUST 2022-P6,
CARVANA AUTO RECEIVABLES
TRUST 2022-N5,
SONORAN AUTO RECEIVABLES TRUST 2016-1,
SONORAN AUTO RECEIVABLES TRUST 2017-1 TERM,
SONORAN AUTO RECEIVABLES TRUST 2018-1 TERM, and
UNKNOWN TRUSTS NO. 1-100,

        Defendants.

_____/

## **COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF**

      Plaintiffs SYRETTA ANGELIQUE HARVIN, DAVID WEAVER, JR., JOSEPH A.

RIEDEL, and DASHAWN J. THORNE (collectively "Class Representatives") sue Defendants,

WILMINGTON TRUST, National Association, not in its individual capacity but solely as Trustee

of the following Delaware statutory trusts: CARVANA AUTO RECEIVABLES GRANTOR

TRUST 2019-1, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-2, CARVANA

AUTO RECEIVABLES GRANTOR TRUST 2019-3, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-4, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2020-NP1, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2020-P1, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N2, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N3, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N4, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-P1, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-2, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-3, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-P2, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2019-4, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-P3, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N1, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N4, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-N5, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-N6, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P1, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P2, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P3, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P4, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P5, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-P6, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2023-P1, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2023-N1, CARVANA AUTO RECEIVABLES TRUST 2019-1, CARVANA AUTO RECEIVABLES TRUST 2019-2, CARVANA AUTO RECEIVABLES TRUST 2019-3, CARVANA AUTO RECEIVABLES TRUST 2019-4, FLEET STREET AUTO-4 2020 TRUST, CARVANA AUTO RECEIVABLES TRUST 2021-P1, CARVANA LLC, CARVANA AUTO RECEIVABLES GRANTOR TRUST 2022-N4, FLEET STREET AUTO-3 2020 TRUST, FLEET STREET AUTO TRUST 2022-1, CARVANA

RECEIVABLES DEPOSITOR LLC, CARVANA FAC LLC, CARVANA AUTO RECEIVABLES TRUST 2022-P6, CARVANA AUTO RECEIVABLES TRUST 2022-N5, SONORAN AUTO RECEIVABLES TRUST 2016-1, SONORAN AUTO RECEIVABLES TRUST 2017-1 TERM, SONORAN AUTO RECEIVABLES TRUST 2018-1 TERM, and UNKNOWN TRUSTS NO. 1-100 (collectively the "SECURITIZATION TRUSTS"), and ALLY BANK, a Delaware corporation ("ALLY"), allege:

## I.   **INTRODUCTION**

1.    This is a consumer protection action brought to redress common law violations as well as other violations under the Pennsylvania Unfair and Deceptive Trade Practices Act by a national used car dealer for its delay in permanently transferring car titles which it had contractually represented to hold and transfer having collected money to do so and, as a result of this delay beyond the statutory periods permitted by the states in which it does business, consumers experience repossession of their vehicles when they stop paying for the untitled and unregistered vehicles they cannot lawfully operate. Often said repossessions are ordered by BRIDGECREST, a company affiliated with CARVANA LLC ("CARVANA") to whom the latter regularly assigns most of its retail installment contracts ("RISCs") for financed purchases.  After being assigned the RISCs, BRIDGCREST transfers the RISCs to either the SECURITIZATION TRUSTS or ALLY.

2.    Other used car dealers have no such title and registration transfer problems and CARVANA's conduct not only harmed the Plaintiffs and similar consumers but also harmed CARVANA'S competitors who are at a competitive disadvantage for having complied with their promises and the law to properly title and register cars they have sold while CARVANA'S routine is the opposite while realizing increased profits from routinely not performing the services it

contracts to perform and is paid to perform but does not perform in relation to the Plaintiffs and class members in this action.

## II.  PARTIES

### A. GENERAL

3.      Plaintiff, SYRETTA ANGELIQUE HARVIN, is an adult individual presently residing at 1218 E. 9th St., Crum Lynne, PA 19126-1539 in Montgomery County.

4.      Plaintiff, DAVID WEAVER JR., is an adult individual presently residing at 148 Joseph Avenue, Johnstown, PA 15902.

5.      Plaintiff, JOSEPH A. RIEDEL, is an adult individual presently residing at 3 Tree Lane, Elkton, MD 21921.

6.      Plaintiff, DASHAWN J. THORNE, is an adult individual presently residing at 1338 Homestead Street, Baltimore, MD 21218.

7.      CARVANA, LLC ("CARVANA") is a Georgia corporation regularly conducting business nationally and in the Commonwealth of Pennsylvania and in the County of Philadelphia. CARVANA is also a licensed used car dealer required to comply with the laws of this Commonwealth.

8.      BRIDGECREST CREDIT COMPANY, LLC ("BRIDGECREST"), is an Arizona limited liability company, doing business in the Commonwealth of Pennsylvania and in the County of Philadelphia.

9.      WILMINGTON TRUST, N.A ("WILMINGTON TRUST") is a national banking association doing business in the Commonwealth of Pennsylvania and in the County of Philadelphia and is being sued herein in its capacity as the trustee of the SECURITIZATION TRUSTS.  As Trustee for the SECURITIZATION TRUSTS, WILMINGTON TRUST is

responsible for carrying out the work and legal duties of the SECURITIZATION TRUSTS as defined by the governing instruments for each of the SECURITIZATION TRUSTS for the benefit of their beneficial owners.

10.     As described below, the SECURITIZATION TRUSTS are securitization trusts that have bought one or more of the retail installment credit contracts that were created by the other financial institutions to extend credit to one or more of the named Plaintiffs and persons similarly situated for the purchase of motor vehicles from CARVANA.

11.     ALLY BANK ("ALLY") is a Delaware corporation regularly conducting business nationally and in the Commonwealth of Pennsylvania and in the County of Philadelphia.

12.     As described below, ALLY has purchased one or more of the credit contracts that were created by the other financial institutions to extend credit to one or more of the named Plaintiffs and persons similarly situated for the purchase of motor vehicles from CARVANA.

13.     Pursuant to 16 C.F.R. §433, known more commonly as the "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or "FTC Holder Rule," SECURITIZATION TRUSTS and ALLY (collectively, "HOLDERS") as holders of the loans at issue herein are subject to all claims and defenses of the class representatives and the class which are available against the credit seller, to-wit: CARVANA.

### B. SECURITIZATION AND SALE OF LOANS BY CARVANA

14.     Since December 2016, CARVANA has sold loans it originates through two primary channels: whole loan sales to ALLY under a Master Purchase and Sale Agreement ("MPSA") and whole loan sales to various trusts under a Master Transfer Agreement ("MTA").[1]  Theses loan sales

---

[1] *https://investors.carvana.com/~/media/Files/C/Carvana-IR/reports-and-presentations/final-carvana-01.pdf*  (last accessed on 05/19/23)

involve solely the standard and uniform RISCs arranged by CARVANA which express the entire agreement between the consumers and Carvana.

15.     After the sale of the motor vehicle loans to third-party purchasers by CARVANA, BRIDGECREST serviced the loans for the third-party purchasers.

16.     Upon information and belief, CARVANA has purposely not publicly disclosed the entities which have purchased the auto loans or even disclose the transfer of the loans to the consumers for whom it has sold vehicles. The non-disclosure by CARVANA has drawn the scrutiny of investor advisors:

> Something unique is happening at Carvana (NYSE:CVNA). Somehow, Carvana sells subprime auto receivables - loans made to low-credit-quality customers in order for them to buy a car - for a profit. This is unique because every used auto retailer we spoke with *pays* a financing company to take its subprime receivables, whereas Carvana actually *gets paid* for them. Indeed, sophisticated companies like Carmax (KMX), which has its own captive financing unit and has been in business for 20 years, pays lenders to take its receivables.
>
> **<u>Unfortunately, Carvana is not disclosing the entity buying its receivables, so we lack context</u>**. What if that entity has motivations other than just making a profit? What if that entity is connected to an insider at Carvana and, as a result, is knowingly overpaying Carvana for those receivables, thereby inflating gross and operating profit? Apparently enough people were inquiring that Carvana voluntarily released an investor FAQ that purports to addresses some of the questions.[2]

(emphasis added)

17.     As a result of the opaqueness of CARVANA's business operations, Plaintiffs are unable to identify the specific entity which may have purchased the loans of the various class members.

18.     Through discovery, Plaintiffs will learn the identity of the specific holder of the

---

[2] *https://seekingalpha.com/article/4239036-carvanas-subprime-receivable-problem* (last accessed on 05/19/23)

loans of the plaintiffs and class members (if not identified herein) and shall amend the Complaint

to include said parties as named defendants as necessary and appropriate.  Upon information and

belief based upon the facts discussed herein WILMINGTON TRUST knows the identities of each

of the unnamed SECURITIZATION TRUSTS since it acts as the trustee for each of the named

SECURITIZATION TRUSTS in this Complaint and it cannot agree to serve as trustee under

Delaware law without its express consent and knowledge.


C.  **JURISDICTIONAL AND VENUE ALLEGATIONS**

19.     Based upon the representations of CARVANA to this and other courts[3], the Court

has jurisdiction of this matter pursuant to general diversity under 28 U.S.C. § 1332 and also

pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), 1453 ("CAFA").   The Court may

also exercise supplemental jurisdiction over the claims presented pursuant to 28 U.S.C. § 1367.

20.     This Court also has jurisdiction asserted for the claims herein because the

SECURITIZATION TRUSTS and ALLY transact business, perform work in, or provide services

in the Commonwealth of Pennsylvania and Philadelphia County in relation to this action and

some of the putative class members. Venue also lies in this judicial district in that the events which

gave rise to this claim occurred here and the property which is the subject of the action is situated

within this district.

21.     Under the substantive common law of Pennsylvania governing this action, the

standard and uniform retail installment contract utilized by CARVANA with each of the Plaintiffs

and putative class members constitutes the "entire agreement" and which subsumes any other

agreements.  Further, given the facts at issue in this case, the laws of the Commonwealth will

---

[3] See Notices of Removal in *Bodner* and *Jennings* (attached as Exhibits 1-2).

adequately protect the Plaintiffs and the putative class members alike since no other jurisdiction in the United States would find CARVANA's conduct and practices subject to this action to be in their interests as confirmed by the various public enforcement actions against CARVANA by government agencies based on the same conduct.

### D.  FACTUAL ALLEGATIONS

22.     At all times relevant hereto, CARVANA acted by and through its agents, servants, and employees who acted within the scope of their authority and within the course of their employment or engagement by CARVANA.

23.     At all times relevant hereto, Tennessee does not permit renewal thirty (30) days after a temporary tag's issuance, Tenn. Code Ann. § 55-4-115(a)(1)-(2) other than upon the written authorization of the commissioner, but not ever as a subterfuge to avoid registering the vehicle.

24.     At all times relevant hereto, temporary registration plates for newly purchased motor vehicles expire within thirty (30) days of issuance and cannot be re-issued, Pa. Code 67 § 43.12. (c) (1)(C).

25.     Other states besides Tennessee, Maryland, and Pennsylvania have similar restrictions and expectations for the issuance of temporary tags and registrations as described above which apply to registration of a vehicle to be operated in that state. Carvana's temporary registration of vehicles purchased by consumers in states other than where they live and intend to operate the vehicle are unlawful in all jurisdictions in which Carvana acts a licensed seller of motor vehicles.

### GENERAL ALLEGATIONS

### A.  Facts Concerning Plaintiff Harvin's Transaction

26.     On or around June 14, 2022, Plaintiff Harvin purchased online from Defendant a 2016 Hyundai Sonata, VIN# ending in 5NPE24AA7GH338944 (hereinafter referred to as "the Harvin Vehicle") by executing a written retail installment contract ("Harvin RISC") (attached hereto as **Exhibit 1**) with the following material terms:

   a)   CARVANA had the bona rights to sell the Harvin Vehicle to Harvin;

   b)   The Harvin RISC would be subject to Pennsylvania law; and

   c)   CARVANA imposed registration, license plate, and title fees listed in the Harvin RISC to be paid to public officials; and

   d)   The Harvin RISC constituted the Parties' "entire agreement" and subsumed any other agreements.

27.     At the time CARVANA offered the Harvin Vehicle for sale to Plaintiff Harvin, it knew it did not have clear and marketable title to the Harvin Vehicle.  In the alternative, it recklessly disregarded the fact that it did not have clear and marketable title to the Reidel Vehicle. These conclusions are based on the fact that neither CARVANA nor any of its various affiliates were ever able to provide Plaintiff Harvin with the permanent title and registration from any state related to the Harvin Vehicle.  In addition, CARVANA knew from its own business records, pattern, and practice as discussed *supra*, that it was never able to timely register at least 10% (or more) of the vehicles it sold.

28.     At no time did CARVANA disclosed its knowledge described in the previous paragraph to Plaintiff Harvin before it offered the Harvin Vehicle for sale and entered into the Harvin RISC with Plaintiff Harvin.  Instead, CARVANA concealed these those facts from Plaintiff Harvin while inducing him to enter into the Harvin RISC agreement with it.  Had CARVANA disclosed those facts to Harvin, he never would have agreed to the Harvin RISC.

29.     Harvin and CARVANA never amended the Harvin RISC by mutual, written agreement and signature.

30.     After purchase, CARVANA assigned the Harvin RISC to ALLY or BRIDGECREST or one of the SECURITIZATION TRUSTS serviced by BRIDGECREST.

31.     After purchase, CARVANA delivered the vehicle with temporary license tags which eventually expired.

32.     Upon information and belief, some, or all of the temporary plates CARVANA provided were not even issued in plaintiff's name, but rather in the name of CARVANA only.

33.     CARVANA failed to provide Harvin with her permanent registration as it was required to do so pursuant to Plaintiff's payment for such service reflected in the RISC.

34.     Plaintiff Harvin relied upon the Harvin RISC and CARVANA's promises to have the vehicle properly registered in the Commonwealth of Pennsylvania as evidenced by her agreements in the Harvin RISC and her payments on the purchased vehicle (which included the fees imposed and thereafter collected by CARVANA that are specified in ¶ 26 *supra*.

35.     Unable to use the vehicle lawfully due to her temporary tags expiring and no permanent registration provided by CARVANA, Harvin ceased payments to BRIDGECREST under the Harvin RISC.

36.     On or about November 2022, BRIDGECREST repossessed the Harvin Vehicle on behalf of its owner. The vehicle was later sold at an auto auction on or about December 26, 2022, as a "fleet/lease vehicle".

37.     Harvin has performed all of the requirements of the Harvin RISC with CARVANA. However, after 30 days CARVANA breached its promises as part of the Harvin RISC agreement, and

it failed to provide Plaintiff Harvin with the permanent title and registration any *bona fide* car dealer would have otherwise provided.

38.     ALLY or BRIDGCREST or the SECURITIZATION TRUSTS stand in the shoes of CARVANA and have no greater rights than CARVANA had to give it related to the Harvin RISC. Given the practices and broken promises of CARVANA discussed *supra*, the Riedel Harvin was unenforceable.  So, the interest of ALLY or BRIDGCREST or SECURITIZATION TRUSTS in the Harvin RISC was and remains unenforceable.

39.     Notwithstanding its interests in the Harvin RISC are unenforceable, the SECURITIZATION TRUSTS through BRIDGECREST negatively reported that Plaintiff Harvin owed sums not owed since its interests in the Harvin Vehicle were never valid and the Harvin RISC was unenforceable.  It reported as described on Harvin's credit reports without disclosing to the credit bureaus its knowledge that 10% or more of all CARVANA transactions, including the Harvin RISC, are infected and unenforceable.

**B.   Facts Concerning Plaintiff Weaver's Transaction**

40.     On or around April 21, 2022, Plaintiff Weaver, purchased online from Defendant for delivery in Pennsylvania a 2015 Hyundai Veloster, VIN# ending in KMHTC6AEXFU244480 (hereinafter referred to as "the Weaver Vehicle") by executing a written retail installment contract ("Weaver RISC") (attached hereto as **Exhibit 2**) with the following material terms:

a)  CARVANA had the bona rights to sell the Weaver Vehicle to Weaver;

b)  The Weaver RISC would be subject to Pennsylvania law; and

c)  CARVANA imposed registration, license plate, and title fees listed in the Weaver RISC to be paid to public officials; and

12

    d)  The Weaver RISC constituted the Parties' "entire agreement" and subsumed any other agreements.

41.    At the time CARVANA offered the Weaver Vehicle for sale to Plaintiff Weaver, it knew it did not have clear and marketable title to the Weaver Vehicle.  In the alternative, it recklessly disregarded the fact that it did not have clear and marketable title to the Reidel Vehicle. These conclusions are based on the fact that neither CARVANA nor any of its various affiliates were ever able to provide Plaintiff Weaver with the permanent title and registration from any state related to the Weaver Vehicle.  In addition, CARVANA knew from its own business records, pattern, and practice as discussed *supra*, that it was never able to timely register at least 10% (or more) of the vehicles it sold.

42.    At no time did CARVANA disclosed its knowledge described in the previous paragraph to Plaintiff Weaver before it offered the Weaver Vehicle for sale and entered into the Weaver RISC with Plaintiff Weaver.  Instead, CARVANA concealed these those facts from Plaintiff Weaver while inducing him to enter into the Weaver RISC agreement with it.  Had CARVANA disclosed those facts to Weaver, he never would have agreed to the Weaver RISC.

43.    Weaver and CARVANA never amended the Weaver RISC by mutual, written agreement and signature.

44.    After purchase, CARVANA assigned the Weaver RISC to ALLY or one of the SECURITIZATION TRUSTS with servicing by BRIDGECREST.

45.    After purchase, CARVANA delivered the vehicle with a temporary license tag which eventually expired in June 2022.

46.    Upon information and belief, some, or all of the temporary plates CARVANA provided were not even issued in plaintiff's name, but rather in the name of CARVANA only.

47.     CARVANA failed to provide Weaver with his permanent registration as it was required to do so pursuant to Plaintiff's payment for such service reflected in the RISC.

48.     Plaintiff Weaver relied upon the Harvin RISC and CARVANA's promises to have the vehicle properly registered in the Commonwealth of Pennsylvania as evidenced by her agreements in the Harvin RISC and her payments on the purchased vehicle (which included the fees imposed and thereafter collected by CARVANA that are specified in ¶ 38 *supra*.

49.     On or about November 25, 2022, Plaintiff was stopped by Johnstown police and issued a citation for operating the vehicle without a valid plate registered to CARVANA rather than Weaver.

50.     Thereafter, the vehicle was taken from plaintiff and impounded by the Johnstown, Pennsylvania police.

51.     Eventually, Plaintiff Weaver stopped making payments on the Weaver RISC since CARVANA had breached its promises and he could not drive or register the Weaver Vehicle himself Weaver ceased making payments as of November 27, 2022, because he could not drive or register the Weaver Vehicle himself and because CARVANA caused the vehicle to be taken because of their failure to convey permanent title and registration and consequent violation of Pennsylvania motor vehicle laws and impoundment by law enforcement.

52.     On or about early January 2023, BRIDGECREST ordered Cernic's Towing to repossess Plaintiff's vehicle from police impound on behalf of ALLY or BRIDGCREST or the SECURITIZATION TRUSTS. The vehicle was later sold at an auto auction on or about February 6, 2022, as a "fleet/lease vehicle".

53.     Weaver performed all of the requirements of the Weaver RISC with CARVANA. However, after 30 days CARVANA breached its promises as part of the Weaver RISC agreement,

and it failed to provide Plaintiff Weaver with the permanent title and registration any *bona fide* car dealer would have otherwise provided.

54.     ALLY or BRIDGCREST or the SECURITIZATION TRUSTS stand in the shoes of CARVANA and have no greater rights than CARVANA had to give it related to the Weaver RISC. Given the practices and broken promises of CARVANA discussed *supra*, the Riedel Weaver was unenforceable.  So, the interest of ALLY or BRIDGCREST or SECURITIZATION TRUSTS in the Weaver RISC was and remains unenforceable.

55.     Notwithstanding its interests in the Weaver RISC are unenforceable, the SECURITIZATION TRUSTS though BRIDGECREST negatively reported Plaintiff Weaver owed sums not owed since its interests in the Weaver Vehicle were never valid and the Weaver RISC was unenforceable.  It made such claims on Weaver's credit reports without disclosing to the credit bureaus its knowledge that 10% or more of all CARVANA transactions, including the Weaver RISC, are infected and unenforceable.

### C.   Facts Concerning Plaintiff Riedel's Transaction

56.     On or around January 14, 2021, Plaintiff Riedel, purchased online from CARVANA for delivery from CARVANA's depot in Pennsylvania a 2017 Mitsubishi Outlander, VIN# JA4AZ2A37HZ007771 (hereinafter referred to as "the Riedel Vehicle").

57.     To accomplish the transaction Plaintiff Riedel agreed to a written retail installment contract ("Riedel RISC" attached hereto as **Exhibit 3**) with the following material terms and understanding:

   a.   CARVANA had the bona rights to sell the Riedel Vehicle to Riedel; and

b.  CARVANA would acquire for Riedel as part of the transaction the legal and final registration, license plate, and title to the Riedel Vehicle from the State of Maryland; and

c.  CARVANA would finance the transaction as part of the RISC after accepting Reidel downpayment of $1,200.00 in reliance to CARVANA's offer and promised in the transaction; and

d.  The Riedel RISC constituted the Parties' "entire agreement" and subsumed any other agreements.

58.     At the time CARVANA offered the Riedel Vehicle for sale to Plaintiff Riedel, it knew it did not have clear and marketable title to the Riedel Vehicle.  In the alternative, it recklessly disregarded the fact that it did not have clear and marketable title to the Riedel Vehicle.  These conclusions are based on the fact that neither CARVANA nor any of its various affiliates were ever able to provide Plaintiff Riedel with the permanent title and registration from any state related to the Riedel Vehicle.  In addition, CARVANA knew from its own business records, pattern, and practice as discussed *supra*, that it was never able to timely register at least 10% (or more) of the vehicles it sold.

59.     At no time did CARVANA disclosed its knowledge described in the previous paragraph to Plaintiff Riedel before it offered the Riedel Vehicle for sale and entered into the Riedel RISC with Plaintiff Riedel.  Instead, CARVANA concealed these those facts from Plaintiff Riedel while inducing him to enter into the Riedel RISC agreement with it.  Had CARVANA disclosed those facts to Riedel, he never would have agreed to the Riedel RISC.

60.     Riedel and CARVANA did not ever amend the Riedel RISC by mutual, written agreement and signature.

16

61.     After purchase, CARVANA assigned the Riedel RISC to ALLY or one of the SECURITIZATION TRUSTS serviced by BRIDGECREST.

62.     After purchase, CARVANA delivered the Riedel Vehicle with temporary license to Plaintiff Riedel along with temporary tags issued from Georgia even though Riedel is a resident of Maryland and Maryland law did not permit CARVANA to issue temporary tags from another state to purchasers like Plaintiff.

63.     After purchase, CARVANA obtained title or had title updated to the Riedel Vehicle from the State of Arizona on or about February 8, 2021 (Title #A002845735) even though it knew the Riedel Vehicle was purchased by Riedel in Maryland from its Pennsylvania depot and delivered to Riedel in Maryland from its Pennsylvania depot.

64.     After purchase, CARVANA also registered the Riedel Vehicle with the State of Tennessee on or about May 20, 2021, even though it knew the Riedel Vehicle was purchased by Riedel in Maryland from its Pennsylvania depot and delivered to Riedel in Maryland from its Pennsylvania depot.

65.     After Riedel's purchase, CARVANA never registered the Riedel Vehicle with the State of Maryland with Riedel as the owner.

66.     Plaintiff Riedel performed all of the requirements of the Riedel RISC agreement with CARVANA.  However, after 90 days CARVANA breached its promises as part of the Riedel RISC agreement, and it failed to provide Plaintiff Riedel with the permanent title and registration any *bona fide* car dealer would have otherwise provided.

67.     Plaintiff Riedel became worried and frustrated because he feared he would be pulled over by police if he drove the vehicle without the title and registration.

68.    Plaintiff Riedel bought the Riedel Vehicle to use for normal, personal purposes. However, he began limiting its use to taking his kids to school to avoid getting pulled over and could not use it fully as he intended when it was sold to him by CARVANA, and he agreed to the Riedel RISC.  Notwithstanding trying to limit his risks, Plaintiff Riedel was pulled over twice by police due to CARVANA's breach of its promises.

69.    Eventually, Plaintiff Riedel stopped making payments on the Riedel RISC since CARVANA had breached its promises and he could not drive or register the Riedel Vehicle himself.

70.    Plaintiff Riedel relied upon the Riedel RISC and CARVANA's promises to have the Riedel vehicle properly registered in Maryland as evidenced by his agreements in the RISC and his payments on the purchased vehicle.

71.    On or about early 2022, BRIDGECREST repossessed the Riedel Vehicle on behalf of the SECURITIZATION TRUSTS.  The Riedel Vehicle was later sold at an auto auction on or about April 11, 2022.

72.    The SECURITIZATION TRUSTS stand in the shoes of CARVANA and have no greater rights than CARVANA had to give it related to Riedel RISC.  Given the practices and broken promises of CARVANA discussed *supra*, the Riedel RISC was unenforceable.  So, the interest of SECURITIZATION TRUSTS in the Riedel RISC was and remains unenforceable.

73.    Notwithstanding its interests in the Riedel RISC are unenforceable, the SECURITIZATION TRUSTS through BRIDGECREST negatively reported Plaintiff Riedel owed sums not owed since its interests in the Riedel Vehicle were never valid and the Riedel RISC was unenforceable.  It made such claims on Riedel's credit reports without disclosing to the credit bureaus its knowledge that 10% or more of all CARVANA transactions, including the Riedel RISC, are infected and unenforceable.

**D.  Facts Concerning Plaintiff Thorne's Transaction**

74.    On or around August 12, 2021, Plaintiff Thorne, purchased online from CARVANA for delivery from CARVANA's depot in Pennsylvania a 2016 Honda Civic, VIN# ending in 19XFC2F79GE228579 (hereinafter referred to as "the Thorne Vehicle").

75.    To accomplish the transaction Plaintiff Thorne agreed to a written retail installment contract ("Thorne RISC" attached hereto as **Exhibit 4**) with the following material terms and understanding:

     a)  CARVANA had the bona rights to sell the Thorne Vehicle to Thorne; and

     b)  CARVANA would acquire for Thorne as part of the transaction the legal and final registration, license plate, and title to the Thorne Vehicle from the State of Maryland; and

     c)  CARVANA would finance the transaction as part of the Thorne RISC after accepting Thorne's downpayment of $1,200.00 in reliance to CARVANA's offer and promised in the transaction; and

     d)  The Thorne RISC constituted the Parties' "entire agreement" and subsumed any other agreements.

76.    At the time CARVANA offered the Thorne Vehicle for sale to Plaintiff Thorne, it knew it did not have clear and marketable title to the Thorne Vehicle.  In the alternative, it recklessly disregarded the fact that it did not have clear and marketable title to the Thorne Vehicle. These conclusions are based on the fact that neither CARVANA nor any of its various affiliates

were ever able to provide Plaintiff Thorne with the permanent title and registration from any state related to the Thorne Vehicle.  In addition, CARVANA knew from its own business records, pattern, and practice as discussed *supra*, that it was never able to timely register at least 10% (or more) of the vehicles it sold.

77.    At no time did CARVANA disclosed its knowledge described in the previous paragraph to Plaintiff Thorne before it offered the Thorne Vehicle for sale and entered into the Thorne RISC with Plaintiff Thorne.  Instead, CARVANA concealed these those facts from Plaintiff Thorne while inducing him to enter into the Thorne RISC agreement with it.  Had CARVANA disclosed those facts to Thorne, we never would have agreed to the Thorne RISC since he did not assume he was dealing with a scoundrel.

78.    Thorne and CARVANA and never anyone else ever amended the Thorne RISC by mutual, written agreement and signature.

79.    After purchase, CARVANA assigned the Thorne RISC pursuant to its routine business plan to one of the SECURITIZATION TRUSTS—i.e. CARVANA AUTO RECEIVABLES GRANTOR TRUST 2021-N3—with servicing by BRIDGECREST.

80.    After purchase, CARVANA delivered the Thorne Vehicle with temporary license to Plaintiff Riedel along with temporary tags issued from Georgia even though Thorne is a resident of Maryland and Maryland law did not permit CARVANA to issue temporary tags from another state to purchasers like Plaintiff Thorne from Maryland.

81.    After Thorne's purchase, CARVANA never registered the Thorne Vehicle with the State of Maryland with Thorne as the owner.

82.    Plaintiff Thorne performed all of the requirements of the Thorne RISC agreement with CARVANA.  However, after 90 days CARVANA breached its promises as part of the Thorne

RISC, and it failed to provide Plaintiff Thorne with the permanent title and registration any bona fide car dealer would have otherwise provided.

83.     Plaintiff Thorne became worried and frustrated because he feared he would be pulled over by police if he drove the vehicle without the title and registration.  But he bought the Thorne Vehicle to use for normal, personal purposes.

84.     Notwithstanding trying to limit his risks, Plaintiff Thorne was pulled over by police on July 19, 2022, due to CARVANA's breach of its promises.

85.     Eventually, Plaintiff Thorne stopped making payments on the Thorne RISC since CARVANA had breached its promises and he could not drive or register the Riedel Vehicle himself.

86.     Plaintiff Thorne relied upon the Thorne RISC and CARVANA's promises to have the Thorne Vehicle properly registered in Maryland as evidenced by his agreements in the RISC and his payments on the purchased vehicle.

87.     On or about August 2022, BRIDGECREST repossessed the Thorne Vehicle on behalf of the SECURITIZATION TRUSTS.

88.     The CARVANA Trust stands in the shoes of CARVANA and has no greater rights than CARVANA had to give it related to Thorne RISC.  Given the practices and broken promises of CARVANA discussed herein, the Thorne RISC was unenforceable.  So, the CARVANA Trust's interests in the Thorne RISC were and remain unenforceable.

89.     Notwithstanding its interests in the Thorne RISC are unenforceable against Thorne, the CARVANA Trust claims it is owed $7,009.00 from Plaintiff Thorne even though its interests in the Thorne Vehicle were never valid and the Thorne RISC was unenforceable.  It makes such claims on Thorne's credit reports without disclosing to the credit bureaus its knowledge that 10%

or more of all CARVANA transactions, including the Thorne RISC, are infected and unenforceable.

90.     Upon information and belief, the temporary plate CARVANA provided was not even issued in plaintiff's name, but rather in the name of CARVANA only.

91.     After expiration of the temporary tag, CARVANA failed to provide Plaintiff with his permanent registration as it was required to do so pursuant to Plaintiff's payment for such service reflected in the RISC.

92.     Plaintiff relied upon the RISC and CARVANA's promises to have the vehicle properly registered in the Commonwealth of Pennsylvania as evidenced by her agreements in the RISC and her payments on the purchased vehicle (which included the fees imposed and thereafter collected by CARVANA that are specified above).

93.     In all of the foregoing repossessions, BRIDGECREST ordered the repossessions of Plaintiffs' respective vehicles although it knew that CARVANA had a systemic inability to transfer title to at least 10% of the vehicles it sold, but failed to ensure that CARVANA was not in breach of its RISCs with Plaintiffs before ordering the aforesaid repossessions.


V.      **CLASS ACTION ALLEGATIONS**

94.     The allegations above are re-alleged and incorporated herein by reference.

95.     This action is properly brought on behalf of a class of similar persons, pursuant to Fed. R. Civ. P. 23(a) and 23(b).  The prerequisites Fed. R. Civ. P. 23 can be met by the following proposed class action proposing the following class, subject to amendment:

        a.   **Nationwide Carvana Class:** (1) All persons in the United States who entered into RISCs with CARVANA which incorporated no other agreements, (2) to finance

vehicles since November 5, 2019, (3) for which CARVANA and its successors and assigns of the RISCs failed to provide car registration services with non-temporary and permanent vehicle registrations in the state of their residence, (4) which RISC was owned by one of the SECURITIZATION TRUSTS, ALLY, or BRIDGECREST and (5) which vehicle was repossessed by BRIDGECREST or another servicer.

b. **Pennsylvania Carvana Class**:   All persons from the Commonwealth of Pennsylvania who are members of the Nationwide Class.

96.     Plaintiffs all qualify as a member of the proposed **Nationwide Carvana Class**. Plaintiffs Weaver and Harvin also qualify as members of the Proposed Pennsylvania Class.

97.     Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of CARVANA ALLY or BRIDGCREST or the SECURITIZATION TRUSTS; (ii) a relative of an employee or independent contractor of CARVANA ALLY or BRIDGCREST or the SECURITIZATION TRUSTS; or (iii) an employee of the Court where this action is pending.  Excluded from the Pennsylvania Class are any persons were purchased vehicles from CARVANA in the Commonwealth of Pennsylvania for business purposes.

98.     The proposed class definitions may be amended or modified from time to time.

99.     The particular members of the (i) Nationwide Class, and (ii) Pennsylvania Class, (collectively referred to "Proposed Classes") are capable of being described without difficult managerial or administrative problems.  The members of the putative classes are also readily identifiable from the information and records in the possession or control of the Defendants or its

affiliates and agents, and from public records.  Defendants are required by the laws governing its practices to keep records of all temporary vehicle registration tags issued by it during the class period and also to retain records of all permanent vehicle registrations it acquires on behalf of its customers.

100.    The Proposed Classes are sufficiently numerous and exceed more than fifty persons each, such that individual joinder of all members is impractical. This allegation is based on publicly filed data disclosed by CARVANA's public and previous court filings.

101.    The Proposed Classes are so numerous that joinder of all members is impracticable as the sheer number of cases would clog the court systems and other forums—especially given the delays to judicial proceedings caused by the COVID-19 pandemic.

102.    There are questions of law and fact common to the Proposed Classes which predominate over any questions affecting only individual members of the putative class and subclass. The wrongs alleged against Defendant by the members of the Proposed Classes and the remedies sought by Named Plaintiffs and the putative class members against  are identical— the discharge of any debt obligation claimed by the SECURITIZATION TRUSTS, the return of monies paid under the RISCs by Class Members and the amelioration of the credit reports of Class Members.

103.    The Proposed Classes meet the requirements of Fed. R. Civ. P. 23 relating to classes that seek monetary relief as the common issues identified above are also the predominant issues in this action in that the common issues related to the members of the Proposed Classes and include, but are certainly not limited to:

      a.    Whether CARVANA failed to transfer title and therefore failed to provide the agreed upon permanent motor vehicle registrations agreed to with the class

members and whether its successors and assigns including ALLY or the SECURITIZATION TRUSTS breached the RISC by repossessing the subject vehicles despite CARVANA's failure to transfer title and registration as it promised in the RISC; and

b.  Whether Defendants' foregoing conduct was unfair, unconscionable, or constituted unfair competition; and

c.  Whether CARVANA is liable to the class members for the damages and losses, including nominal damages, in the form of the fees agreed upon for the services not reasonable provided; and

d.  Whether the SECURITIZATION TRUSTS, ALLY, or BRIDGECREST may enforce the RISCs against the Class Members.

104.  The defenses of ALLY, BRIDGECREST, or the SECURITIZATION TRUSTS (which defenses are denied) would be typical or identical for each of the members of the Proposed Classes and will be based on the same legal and factual theories.

105.  Certification of the Proposed Classes is appropriate as to the members of the Proposed Classes in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.

106.  A class action will cause an orderly and expeditious administration of claims by the members of the Proposed Classes and economies of time, effort and expenses will be fostered and uniformity of decisions will be ensured.

107.  The only individual questions concern the identification of members of the Proposed Classes. This information can be determined by a ministerial examination of public records or from the Defendant's business records or other sources including those from the state

agencies, which are admissible as an exception to the hearsay rule and as a statement by a party or qualify as government records to which the Court may take judicial notice.

108.    The Named Plaintiffs' class claims are typical of the claims of the members of the Proposed Classes since they are based on and arise out of identical facts constituting the wrongful conduct of the CARVANA, BRIDGECREST, ALLY, and the SECURITIZATION TRUSTS (directly and indirectly).

109.    Plaintiffs will also fairly and adequately represent and protect the interests of the Proposed Classes. They are similarly situated with, and have suffered similar injuries to, the Proposed Classes they propose to represent. Plaintiffs do not have any interests which might cause them not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the Proposed Classes. They feel that they and the putative class members have been wronged and wish to obtain redress of the wrong and to stop ALLY, BRIDGECREST, and the SECURITIZATION TRUSTS from failing to comply with its mandatory duties that form the basis of the class claims.

110.    Plaintiffs have also hired attorneys who meet the criteria of Fed. R. Civ. P. 23 as they can adequately represent the classes since they are experienced attorneys with substantial class action experience and focus their practices in the areas of consumer law. Plaintiffs and counsel have adequate financial resources to assure that the classes will not be harmed.

111.    The Proposed Class members have suffered actual damage, losses, and harm similar to those sustained by the Plaintiffs.

**PATTERN AND PRACTICE**

112.    The allegations regarding the additional victims set forth herein are pleaded in accordance with case law and Pa.R.E. 404(b)(2) to demonstrate CARVANA's motive, knowledge,

notice, plan, scheme and the absence of mistake or accident, and to demonstrate the propriety of exemplary damages under the UTPCPL. Pa.R.E. 404(b)(2) ("[e]vidence of other crimes, wrongs, or acts may be admitted [into evidence] for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity or absence of mistake or accident.") (emphasis added).  These allegations also substantiate and support the Plaintiffs' claim(s) for punitive and/or exemplary damages.

113.    CARVANA is a repeat offender.

114.    CARVANA has engaged in a pattern and practice of fraud and deceit and has defrauded and deceived and harmed numerous consumers.

## VI.    CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT

### (CLASS CLAIM ON BEHALF OF THE NATIONWIDE CLASS AND THE PENNSYLVANIA CLASS)

115.    Plaintiffs incorporate the preceding paragraphs herein. This claim is brought on behalf of the Plaintiffs individually and on behalf of the Nationwide Title Class and the Pennsylvania Title Class members against all Defendants.

116.    As described herein, Plaintiffs, the Nationwide Class, and the Pennsylvania Class members formed contracts with CARVANA which were assigned to ALLY, BRIDGECREST, or the SECURITIZATION TRUSTS and, as assignees of the RISC, Defendants ALLY, BRIDGECREST, and the SECURITIZATION TRUSTS are subject to all of the same claims as the assignor CARVANA and/or are vicariously liable as the servicing agent for the owner of the subject RISC..

117.    Every contract imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract.

118.    An express and/or implied term of the contracts between the Plaintiffs, the Nationwide Class, and the Pennsylvania Class members, is that Defendants collectively agreed that the sale was being conducted in compliance with all laws and regulations governing such sales including with regards to permanent titling and registration of vehicles its sells or leases under financing arrangements with its consumer purchasers.

119.    By failing to permanently license and register the vehicles properly in the fees it charged and collected from the Plaintiffs, the Nationwide Title Class, and the Pennsylvania Title Class members, CARVANA failed to conduct the sale of the vehicles to the Plaintiffs and class members in compliance with all state laws and regulations governing such permanent titling and registration of vehicles sold or leased by CARVANA and BRIDGECREST thereafter improperly repossessed the vehicles on behalf of itself or ALLY or THE SECURITIZATION TRUSTS when the consumer purchasers ceased payments on the RISCs for the reason that they were unable to lawfully operate the subject financed vehicles due to the unlawful title and registration delays caused by CARVANA's unsound business practices.

120.    By its aforesaid conduct, CARVANA breached the terms of the contracts it had with the Plaintiffs, the Nationwide Title Class, and the Pennsylvania Title Class members, including any implied or express warranties therein, and acted in bad faith.

121.    CARVANA has wrongfully, recklessly, and/or intentionally breached the duty of good faith by denying Plaintiffs and the Nationwide Title Class and the Pennsylvania Title Class members the benefits to which they bargained and paid for in their sales contracts.

122.    CARVANA's breaches of the covenant of good faith and fair dealing have proximately and directly caused damage to Plaintiffs, the Nationwide Title Class, and the Pennsylvania Title Class members.

### COUNT II - UNFAIR TRADE PRACTICE CONSUMER PROTECTION LAW ("UTPCPL")

### (CLASS CLAIM ON BEHALF OF THE PENNSYLVANIA TITLE CLASS)

123.    108.    Plaintiffs incorporate the preceding paragraphs herein. This claim is brought on behalf of the Plaintiffs individually and on behalf of the Pennsylvania Title Class members.

124.    109.    The used motor vehicle sales practices described herein related to CARVANA constitute trade and commerce under the UTPCPL, 73 P.S. §201-2(3).

125.    110.    The UTPCPL, 73 P.S. §§201-2(4) prohibits unfair or deceptive trade practices in the sale of goods such as used motor vehicle sales as provided by CARVANA, and also prohibits unfair or deceptive trade practices in the sale or provision of such services as described in this action.

126.    Plaintiffs and the Pennsylvania Title Class members purchased their vehicles for personal, family, and/or household purposes.

127.    CARVANA by its acts or omissions described herein, made materially false, misleading oral or written statements or other representations, directly and indirectly through authorized agents and employees, including but not limited to the following:

128.    Imposing and collecting car registration fees for which it did not perform the agree upon service and/or utilized an unfair and deceptive practice of issuing temporary registrations from States other than the state or Commonwealth in which it did not have the lawful right to do.

129.    BRIDGECREST, by its acts or omissions described herein, made materially false, misleading oral or written statements or other representations, directly and indirectly through authorized agents and employees, including but not limited to the following:

      a.   Ordering repossession of Plaintiffs' vehicles although it knew that CARVANA had a systemic inability to transfer title to at least 10% of the vehicles it sold,

but failed to ensure that CARVANA was not in breach of its RISCs with
Plaintiffs before ordering repossession of the Plaintiffs' respective vehicles.

130.   Plaintiffs suffered an ascertainable loss of money by payment of the
title/registration and transit fees described herein.

131.   As a licensed installment seller CARVANA knew or should have known prior to
making the sales to Plaintiffs and Pennsylvania Title Class members the laws governing the
transactions.

132.   The routine business practices of CARVANA and BRIDGECREST subject to this
claim disregarded the laws governing the Plaintiffs' respective transactions.

133.   No reasonable person would assume that a licensed installment seller like
CARVANA or its assignees, ALLY, BRIDGECREST, or the SECURITIZATION TRUSTS, would
violate the laws governing its activities.

134.   Plaintiffs and the Pennsylvania Title Class members justifiably relied on
CARVANA's acts and omissions by believing the fees charged to them were lawful and bona fide
and they paid the fees as further evidence of that reasonable reliance.

135.   Plaintiffs and the Pennsylvania Title Class members justifiably relied on
BRIDGECREST's acts and omissions by paying to BRIDGECREST the monthly payments
charged to them in the RISC as further evidence of that reasonable reliance.

136.   By the aforesaid misrepresentations and others referenced herein, these
misrepresentations and omissions had the capacity, tendency, or effect of deceiving or misleading
the plaintiff to purchase the subject vehicle in violation of the UTPCPL by, including but not
limited to causing a likelihood of confusion or misunderstanding as to the propriety of the
registration fee, all in violation 73 P.S. § 201-1(4)(xxi)("catch-all" provision).

137.     By its deceptive conduct towards plaintiff as described above, CARVANA and BRIDGECREST is strictly liable to Plaintiffs and the Pennsylvania Title Class members for damages they incurred.

138.     By its deceptive conduct towards plaintiff as described above, FREEDOM and CAPITOL ONE are strictly liable to Plaintiffs under the "catch-all" provision of the UTPCPL for damages they incurred.

## COUNT III - DECLARATORY RELIEF

### (CLASS CLAIM ON BEHALF OF THE NATIONWIDE TITLE CLASS AND THE PENNSYLVANIA TITLE CLASS)

139.     Plaintiffs incorporate the preceding paragraphs herein and bring this claim for Declaratory Relief under 28 U.S.C. §2201 to settle and obtain relief from uncertainty and insecurity with respect to the rights, status, and legal relations of Plaintiffs and members of the class and the consumer protections embodied in state and federal law.

140.     Consumers will not receive the protections and benefits of law until this Court declares and affirms that the RISCs are unenforceable as a result of the failure of CARVANA to transfer title and registration to the motor vehicles of the Class Members.

141.     BRIDGECREST, as the agent of the SECURITIZATION TRUSTS, has reported and continues to report negative information based on the refusal of the Class to pay the RISCs.

142.     There is an actual, judicable controversy between the parties, relating to the ability of the SECURITIZATION TRUSTS to enforce the RISCs of Plaintiffs and the members of the Class.

143.     Plaintiffs and other members of the Class are likely to succeed on the merits of this action.

144.     Plaintiffs and the putative class have a reasonable fear that the Defendants are enforcing and continue to enforce rights under the RISCs of the Class Members.

145.     Plaintiffs and the putative class members have a reasonable fear of imminent damage to their credit reports and financial security.

146.     There is a bona-fide, actual, present practical need for a declaration that the credit contracts of Plaintiffs and the other class members were not consummated and are therefore not enforceable.

147.     The declaration concerns a present, ascertained, or ascertainable set of facts or present controversy to a state of facts.

148.     Any immunity, power, privilege, or right of the Plaintiffs and class members is dependent upon the facts or the law applicable to the facts.

149.     The Defendants have, or may reasonably have, an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

150.     The relief sought is not merely the giving of legal advice of the answers to questions propounded out of curiosity.

## COUNT IV - RESTITUTION AND UNJUST ENRICHMENT (IN THE ALTERNATIVE)

### (CLASS CLAIM ON BEHALF OF THE NATIONWIDE TITLE CLASS AND THE PENNSYLVANIA TITLE CLASS)

151.     Plaintiffs incorporate the paragraphs preceding herein.

152.     This cause of action is pleaded in the alternative to Plaintiff's cause of action for breach of contract.

153.     By paying or agreeing to pay money for credit services, Plaintiffs and members of

the Class conferred a benefit upon the CARVANA and the SECURITIZATION TRUSTS.

154.    Defendants accepted the benefits conferred upon them by Plaintiffs and members of the Class.

155.    Defendants' collection, acceptance, and retention of these charges, when Defendants were not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and Defendants have not refunded the charges to the members of the Class. Defendants should not be permitted to retain the benefits of those illegal charges. The continued withholding of the illegal charges is improper.

156.    Plaintiffs and members of the Class conferred these unjust benefits upon Defendants after and as a result of Defendants' misconduct as set forth herein.

## **PRAYER FOR DAMAGES**

WHEREFORE, Plaintiffs request that the Court grant judgment against the Defendants as follows:

A.  Certifying this action as a Class Action with the Proposed Classes as defined above and with Plaintiffs as the representative of the Proposed Classes and their Counsel as Class Counsel; and

B.  Awarding Plaintiffs and the members of the Proposed Classes appropriate actual damages under the legal theories alleged herein together with pre-judgment interest; and

C.  Ordering Defendants CARVANA and BRIDGECREST to pay treble damages to the Plaintiffs and the members of the Pennsylvania Title Class under the UTPCPL; and

D.  Ordering Defendants to pay costs, penalties, and attorney's fees; and

E.  Granting such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully Submitted,

*/s/Robert  P. Cocco*
ROBERT P. COCCO, P.C.
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200
bob.cocco@phillyconsumerlaw.com

*/s/ Phillip Robinson*
Phillip Robinson, Attorney
*Pro Hac Vice pending*
CONSUMER LAW CENTER LLC
10125 Colesville Road, Suite 378
Silver Spring, MD  20901
Phone (301) 448-1304
Email: phillip@marylandconsumer.com

Dated: May 31, 2023

***Attorney for Plaintiffs and the Putative Classes***

## Certificate of Service

I hereby certify that a copy of the foregoing and the attached exhibits were sent through the Court's CM/ECF system to counsel for the Defendant when filed with the Court.

*/s/Robert  P. Cocco*
Robert P. Cocco