IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNINGS, *et al.* | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CARVANA, LLC, | : | NO. 21-5400 |
| | : | |
| Defendant. | : | |
| HARVIN, *et al.* | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CARVANA, LLC, *et al.* | : | NO. 23-2068 |
| | : | |
| Defendants. | : | |

MEMORANDUM

Perez, J.                                                                                                         January 6, 2026

Plaintiffs bring this putative class action against Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest") arising from used-vehicle purchases made through Carvana's online platform. Among other claims, Plaintiffs allege that Carvana's standard Pennsylvania retail installment sales contracts ("RISCs") improperly disclosed and imposed certain charges and fees in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. and Cons. Stat. Ann. § 201-2(4)(xxi), and the Pennsylvania Consumer Credit Code ("CCC"), 12 Pa. Cons. Stat. §§ 6201–6319. Carvana moves to dismiss the UTPCPL claim in Count II to the extent it is predicated on Plaintiffs' newly asserted "Transit Charge Class" and "Transit Charge Subclass" theories. Carvana contends that the RISCs plainly disclose the challenged charges, that Plaintiffs' allegations of deception and loss are speculative, and that the fee-disclosure theory fails as a matter of law. Plaintiffs respond that the

1

contract's structure and itemization are misleading and that they have plausibly alleged deceptive practices and resulting harm. For the reasons that follow, the motion is granted in part and denied in part.

I.     **FACTUAL BACKGROUND**

In December 2020, Plaintiff Dana Jennings purchased a pre-owned 2017 Kia Sportage from Carvana pursuant to Carvana's standardized Pennsylvania retail installment sales contract ("RISC"). ECF 87 ¶ 15. The RISC lists a "Cash Price of Motor Vehicle" of $14,990.00 at Line 1a. *Id*. Plaintiffs allege that, under Carvana's standardized pricing practices, this cash price already included a $590.00 transportation or delivery component reflecting the cost of moving the vehicle to the buyer's local area. *Id*. ¶¶ 33–34. Plaintiffs further allege that the cash price for each named plaintiff's vehicle ended in "$__90.00," which they contend supports an inference that a $590.00 delivery component was embedded in the listed cash price. *Id*. ¶¶ 15(b), 35(b).

The Jennings RISC contains default line items for "Government taxes" (Line 1b), "Accessories and installation" (Line 1c), and "Delivery charge" (Line 1d). *Id*. ¶ 15 & 97-2. The "Delivery charge" line on Jennings's RISC states "N/A." *Id*. ¶ 26. Line 1 of the RISC represents that it is the "Total Cash Price of Motor Vehicle (1a thru 1h)" and lists that total as $16,715.12. (*Id*. ¶ 27.) Only two amounts appear on Lines 1a through 1h: the $14,990.00 cash price (Line 1a) and $1,135.12 in government taxes (Line 1b), totaling $16,125.12—$590.00 less than the stated "Total Cash Price." (*Id*. ¶¶ 25, 27.) Plaintiffs contend that the $590.00 difference is unexplained and is attributed to an undisclosed delivery charge embedded in the total cash price, even though the RISC lists "N/A" for a delivery charge. (*Id*. ¶¶ 26–27.)

In addition to the "Total Cash Price" shown at Line 1, the Jennings RISC lists other charges in a separate section labeled "Total Other Charges and Amounts Paid to Others on Your Behalf (4a thru 4p)." That section includes a separate line-item "Transit Charge" of $590.00 at Line 4g. *Id.* ¶ 31. Plaintiffs allege that the appearance of a $590.00 amount both in the "Total Cash Price" and again as a "Transit Charge" supports their contention that Jennings was charged twice for the same delivery-related service, or that the RISC misleadingly presented the charge in a manner that obscured how it was included in the overall price. *Id.* ¶¶ 31–34.

Plaintiffs further allege that Carvana assessed various government-related fees—such as a state registration fee, license plate fee, title fee, and lien filing fee—but did not separately itemize them. *Id.* ¶ 15. Instead, Jennings's RISC aggregates those amounts under a single line item labeled "Paid to Public Officials (incl. filing fees)" at Line 4c. *Id.* ¶ 15 & 97-1. Plaintiffs contend that Carvana's delivery/transit charges and its aggregation of government fees reflect standardized practices that caused consumers to pay duplicative or improperly disclosed amounts, resulting in ascertainable losses. *Id.* ¶¶ 117–119.

## II.    PROCEDURAL BACKGROUND

Plaintiffs Jennings and Furlong filed this putative class action in the Philadelphia Court of Common Pleas on November 5, 2021, and Defendants removed it to the Eastern District of Pennsylvania on December 9, 2021. *See* ECF No. 1, Ex. 1. Early in the federal proceedings, Defendants moved to compel arbitration and to dismiss; after oral argument, the court denied the motion, and Defendants appealed. Proceedings were stayed pending resolution of the appeal. In April 2024, the Third Circuit affirmed the denial of arbitration, and the mandate issued shortly thereafter. *See* ECF No. 50.

`        While the appeal was pending, on May 23, 2023, Plaintiffs Harvin and Weaver—along with two Maryland residents whose claims were later compelled to arbitration—filed a separate putative class action in this Court against Carvana and Bridgecrest raising similar claims. (*See Harvin, et al. v. Carvana, et al.*, No. 2:23-cv-02068 ("Harvin"), ECF No. 1. Following the Third Circuit mandate, the case was reopened and reassigned, and the two matters were consolidated for all purposes on July 12, 2024. ECF No. 74. The consolidated action was reassigned from Judge Jeffrey L. Schmehl to this Court on August 22, 2024. ECF No. 75.

On September 13, 2024, the Court granted Defendants' motion to compel arbitration as to the two non-Pennsylvania plaintiffs. Shortly thereafter, on November 5, 2024, the parties stipulated to stay the case to pursue settlement negotiations and to permit the named Plaintiffs to file an amended consolidated complaint on behalf of a putative class limited to Pennsylvania residents. ECF No. 81. As part of the stipulation, Carvana reserved its right to move to dismiss the newly asserted claims. *Id.* at 2. Plaintiffs filed the operative Amended Consolidated Complaint on November 7, 2024. ECF No. 87.

The Amended Consolidated Complaint asserts claims for breach of contract, violations of the UTPCPL (including a per se UTPCPL theory), declaratory relief, restitution/unjust enrichment, and violations of the federal Odometer Act. ECF 87 at ¶¶ 106–205. The instant motion concerns Count II (UTPCPL) and Plaintiffs' newly added allegations involving the "Transit Charge Class" and "Transit Charge Subclass," defined by Plaintiffs follows:

> **Transit Charge Class:** All persons who were residents of the Commonwealth of Pennsylvania when they entered into a Standard Pennsylvania RISC that: 1) included a delivery charge as part of the total cash price of the vehicle but was not disclosed or itemized as a separate charge on the RISC and/or presented with a "N/A"; and/or 2) for whom a delivery charge had already been included in the cash price of the vehicle; and/or 3) for whom a Transit Charge was included as a separate charge on the RISC during the

    time period beginning six (6) years prior to the filing of this Amended Consolidated Complaint Class Action and up through the date of class certification.

    **Transit Charge Subclass:** All persons who are members of the Transit Charge Class whose RISCs included fees for registration, title, license plate and lien filing that were included in the aggregate as one single charge and/or in the line item "Paid to Public Officials."

*Id.* ¶ 88. Jennings is the only Plaintiff of the four that alleges Carvana imposed improper delivery or transit charges. *See* ¶¶ 25–34.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In evaluating a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor, but it disregards legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, the Court may consider the complaint, exhibits attached to the complaint, documents incorporated by reference, matters of public record, and "undisputedly authentic" documents upon which the complaint is based, where the plaintiff's claims are premised on those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Because Plaintiffs' allegations concerning the challenged fee disclosures are grounded in the

5

RISCs and related transaction documents, the Court may consider those documents at this stage to the extent their authenticity is not disputed.

## IV.    LEGAL ANALYSIS

"To establish a claim under the UTPCPL for deceptive conduct, a plaintiff must demonstrate: '"(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss."' *Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 810-11 (E.D. Pa. 2016) (quoting *Slapikas v. First American Title Ins. Co.,* 298 F.R.D. 285, 292 (W.D.Pa. 2014)). No showing of deceptive intent is required: "It is the capacity to deceive rather than the actor's state of mind that renders conduct actionable under the amended catch-all provision of the [UTP]CPL … any deceptive conduct, 'which creates a likelihood of confusion or misunderstanding,' is actionable under 73 P.S. § 201-2(4)(xxi), whether committed intentionally (as in fraudulent misrepresentation), carelessly (as in negligent misrepresentation), or with the utmost care (as in strict liability)," *Gregg v. Ameriprise Fin., Inc*., 195 A.3d 930, 939 (Pa. Super. Ct. 2018) (quoting UTPCPL).

Plaintiffs allege that Carvana engaged in unfair and deceptive conduct in three related ways: (1) by assessing delivery-related or "Transit" charges that were not disclosed in the manner required by the Pennsylvania Consumer Credit Code ("CCC"), and therefore were unlawful; (2) by charging the same delivery-related amount twice—once embedded in the "Cash Price of Motor Vehicle" on Line 1a of the RISC and again as a separate "Transit Charge" on Line 4g; and (3) by failing to separately itemize certain charges paid to public officials, contrary to the CCC's

6

itemization requirements. For the reasons set forth below, the Court will grant Carvana's motion to dismiss solely to the extent Plaintiffs' claim rests on the "double-dipping" theory.

1. ***"Confusing Disclosure" Theory: Whether the Transit Charge Was Properly Disclosed Under the CCC***

Section 6233 of the CCC permits a motor vehicle seller using an installment contract to impose only those charges that are "disclosed as required by section 6222(5)." 12 Pa. C.S. § 6233(a). Section 6222(5), in turn, requires that the contract contain specified information "in writing and in a clear and conspicuous manner, with each component of each subparagraph listed separately." 12 Pa. C.S. § 6222(5). Among the required disclosures is the "purchase price of the motor vehicle," which must include itemized components such as taxes, delivery charges, accessories and installation charges, and other charges normally included in the delivered purchase price. *See* 12 Pa. C.S. § 6222(5)(i)(A)–(F).

Plaintiffs contend that if Carvana included any delivery- or transit-related charge in the vehicle's purchase price, the CCC required that charge to be disclosed within the "purchase price" itemization set out in § 6222(5)(i). They point to the RISC's purchase-price section, where Line 1 is labeled "Total Cash Price of Motor Vehicle (1a thru 1h)," and argue that any component included in that total must appear on Lines 1a through 1h. *See* ECF 87 ¶ 27. Plaintiffs also emphasize that Carvana's standardized RISC appears to mirror the statutory categories by providing dedicated line items corresponding to § 6222(5)(i), including lines for taxes (Line 1b), accessories and installation (Line 1c), and delivery charges (Line 1d). Against that backdrop, Plaintiffs allege that the Jennings RISC lists "N/A" for "Delivery charge" on Line 1d, and that Lines 1a–1h reflect only the cash price and government taxes—yet the "Total Cash Price" on Line 1 exceeds the sum of those disclosed components by $590. (Id. ¶¶ 25–27.) Plaintiffs argue this mismatch implies that an

7

additional $590 amount has been included in the total purchase price without being itemized in the purchase-price section. And, in the same contract, Carvana separately lists a $590 "Transit Charge" elsewhere on the form, under "Other Charges," at Line 4g. (Id. ¶ 31.).

Section 6222(5)(i) contains a limited exception allowing service contract costs to be disclosed separately under the "other charges" provision of § 6222(5)(v). 12 Pa. C.S. § 6222(5)(i)(D)(II). Plaintiffs argue that no similar exception exists for delivery or transit charges and that the form itself reflects this structure, as it provides a designated "(Optional) Service Contract" line within Section 4 ("Other Charges"). The "Transit Charge" here is not a service contract and was not disclosed in the manner contemplated by § 6222(5)(i)(D). The presence of a specific statutory exception for service contracts implies that no other exceptions should be inferred. *See Shrom v. Pa. Underground Storage Tank Indem. Bd.*, 261 A.3d 1082, 1092 (Pa. Commw. Ct. 2021), aff'd, 292 A.3d 894 (Pa. 2023).

Carvana moves to dismiss Plaintiffs' "confusing disclosure" theory—i.e., the claim that the structure and arithmetic of Carvana's standardized Pennsylvania RISC could mislead an ordinary consumer about whether and how a delivery- or transit-related charge was included in the transaction price. Carvana argues that the "Transit Charge" is expressly disclosed on the face of the contract and therefore cannot be deceptive as a matter of law. That argument may ultimately prove persuasive on a fuller record and with developed briefing on the CCC's requirements, but at the Rule 12 stage, the Court's task is not to determine whether Plaintiffs' interpretation is the best reading of the RISC or whether the RISC ultimately satisfies every aspect of the CCC. *See Twombly*, 550 U.S. at 556; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

The UTPCPL's catch-all provision prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). Although a private plaintiff must ultimately prove justifiable reliance and an ascertainable loss, see *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646–47 (Pa. 2021), the complaint need only allege facts making those elements plausible. Those allegations are supported by the CCC's disclosure scheme, which requires installment sales contracts to disclose the vehicle's "purchase price" clearly and conspicuously, with each component listed separately, including taxes and "charges for delivery." 12 Pa. C.S. § 6222(5)(i). Plaintiffs allege Carvana's RISC tracks that structure by providing dedicated line items—including a "Delivery charge" line—yet lists delivery as "N/A" while the "Total Cash Price" appears to include an additional $590. (ECF 87 ¶¶ 26–27.) At the pleading stage, that mismatch plausibly suggests the disclosure format could mislead a reasonable consumer about whether and how a delivery- or transit-related charge was included in the purchase price.

Plaintiffs also allege that the challenged disclosure practices caused consumers to pay money they otherwise would not have paid, or would have paid only with proper disclosure, which is sufficient at this stage to plead an ascertainable loss. (ECF ¶¶ 117–119.) Whether Plaintiffs can ultimately prove reliance and loss—and whether any confusion was material rather than technical—are issues better addressed at later stages of the case. Accordingly, the Court will deny Carvana's motion to dismiss to the extent it seeks dismissal of Count II based on the "confusing disclosure" theory.

   2. *Plausibility of the Double-Dipping Theory*

The Court will dismiss Plaintiffs' "double-dipping" theory because the Amended Consolidated Complaint does not plead enough facts to plausibly support the premise that Carvana

embedded a $590 delivery charge in the vehicle's cash price and then assessed that same $590 again as a separate "Transit Charge." Plaintiffs allege, without attribution, that "a delivery charge of $590 was already included in the cash price of the motor vehicle (i.e., $14,990), as with most if not all cars with prices ending in _90." (ECF ¶ 33.) Aside from that bare assertion and the fact that the RISC separately lists a transit charge, Plaintiffs do not plead any factual basis for why prices ending in "_90" reflect an embedded delivery charge, why Carvana purportedly follows such a practice, or how that alleged practice operates in the ordinary course. The Court is not required to accept as true "threadbare" or conclusory allegations unsupported by factual content. *Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017) (explaining that allegations that "are no more than conclusions, are not entitled to the assumption of truth"); see also *Iqbal*, 556 U.S. at 678.

Nor does Plaintiffs' speculation about what other sellers may do supply the missing plausibility. Even if it were generally true that some retailers incorporate delivery or transportation costs into the listed vehicle price, that would not, without more, permit a reasonable inference that Carvana did so here, much less that it did so in a manner resulting in a duplicative charge. *See Twombly*, 550 U.S. at 554 (a complaint must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct). Put differently, Plaintiffs have not alleged facts that would allow the Court to plausibly infer that the $590 transit charge reflects a second assessment of a $590 amount already included in the cash price, as opposed to a separately charged fee disclosed elsewhere in the contract.

Moreover, even accepting Plaintiffs' premise that some delivery-related cost may be embedded in a vehicle's cash price, that allegation does not necessarily equate to improper "double dipping." Plaintiffs' own framing suggests that "delivery" and "transit" charges can refer to

different services. On that understanding, charging one fee for transporting a vehicle to a regional hub and a separate fee for delivering the vehicle from a local location to the buyer would not, without additional factual allegations, be inherently unfair or deceptive. The complaint does not plead facts establishing that the two charges here necessarily covered the same service or were duplicative in substance, rather than merely similar in amount.

Accordingly, the Court will dismiss Plaintiffs' "double-dipping" theory because it depends on a speculative factual premise—namely, that Carvana embedded a $590 delivery charge in the vehicle's cash price and then assessed the same amount again as a separate "Transit Charge"—without alleging facts that make that premise plausible. The Complaint offers only a generalized, unsupported assertion about pricing patterns and invites the Court to infer a hidden charge from conjecture rather than from concrete allegations. That is insufficient under *Twombly* and *Iqbal*. At the same time, the Court's conclusion is limited to this duplicative-charging theory: unlike Plaintiffs' separate "confusing disclosure" theory, which turns on the face of the RISC and its internal arithmetic, the double-dipping theory requires an additional factual showing about Carvana's pricing practices that Plaintiffs have not plausibly pleaded. For these reasons, the Court will grant the motion to dismiss to the extent Count II rests on the double-dipping theory.

3.  *Plausibility of the Government-Fee Itemization Theory*

Plaintiffs' UTPCPL claim also rests on allegations that Carvana failed to properly itemize certain charges and fees paid to public officials—such as title, registration, license plate, and lien-filing fees—as required by the CCC. To reiterate, the CCC requires that an installment sales contract disclose specified components of the transaction "in writing and in a clear and conspicuous manner," with each component "listed separately." 12 Pa. C.S. § 6222(5). The

disclosure in the RISC must include "[t]he purchase price of the motor vehicle," the "amount financed," and applicable subcomponents such as "[c]harges for delivery" and "[o]ther charges normally included in the delivered purchase price of a motor vehicle." Id. § 6222(5). Plaintiffs allege that, although Carvana assessed multiple distinct government-related fees in connection with the Jennings transaction, the RISC did not separately itemize those fees. Instead, Plaintiffs contend Carvana aggregated the charges into a single line item labeled "Paid to Public Officials (incl. filing fees)" under the "Other Charges" section of the contract. (Am. Compl. ¶ 15.) Plaintiffs argue that this aggregation obscures the specific amounts charged for each fee and therefore fails to satisfy the CCC's disclosure structure, which they contend requires separate disclosure of those distinct fee components.

Carvana contends that the CCC permits a seller to aggregate government-related fees—such as registration, title, plate, and lien filing fees—into a single charge and that Plaintiffs' "sub-itemization" theory improperly reads additional requirements into § 6222(5). At the motion-to-dismiss stage, however, the Court's task is not to definitively construe the CCC's disclosure requirements or determine whether a particular itemization method is ultimately compliant. Rather, under *Twombly* and *Iqbal*, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in Plaintiffs' favor, while disregarding mere legal conclusions, and determine only whether the complaint states a claim that is plausible on its face. Applying that standard, it is enough that Plaintiffs plausibly allege that combining multiple distinct fees into a single line item could mislead consumers about what they were being charged and why, thereby supporting a claim under the UTPCPL catch-all provision. Accordingly, Carvana is not entitled to dismissal of Count II insofar as it is premised on the allegedly improper aggregation and disclosure of government fees.

V.       CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART and DENIED IN PART**. The motion is granted to the extent Count II is premised on Plaintiffs' theory that Defendants assessed duplicative transit/delivery charges ("double-dipping" theory), and those allegations are dismissed. The motion is otherwise denied, including as to Plaintiffs' UTPCPL claim based on the alleged confusing disclosure of transit-related charges and the alleged improper aggregation of government-related fees.